UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :

VIRGINIA TOOMER,                                     :

                                                          :

                                      Plaintiff,        :                    11 Civ. 7515 (PAE)
                  -v-                                                      :

                                                          :                  <u>OPINION & ORDER</u>

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,  :
LESLIE GUZMAN, THE CITY OF NEW YORK,        :
POLICE OFFICER RAMON PALANCO, and JOHN DOE :
POLICE OFFICERS #1-4,                                      :

                                                          :

                                    Defendants.     :

                                                          :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        In this civil rights action, plaintiff Virginia Toomer sues Cellco Partnership d/b/a Verizon Wireless ("Verizon"), the City of New York (the "City"), and individual defendants. Toomer's claims arise from events which occurred on January 23, 2011, when she was arrested outside a Verizon store on West 125th Street in Harlem after an altercation with a Verizon store manager and officers of the New York City Police Department ("NYPD"). Toomer brings claims under 42 U.S.C. § 1983 and under New York law for false arrest, malicious prosecution, assault, battery, conspiracy, constitutional tort, negligence, and respondeat superior; she seeks special, compensatory, and punitive damages, as well as costs and attorneys' fees. Verizon and defendant Leslie Guzman, the Verizon store manager, bring this motion to dismiss all claims pending against them. For the reasons that follow, that motion is granted.

**I.     Background**[1]

   **A.  Parties**

Toomer is a New York City resident.  Verizon is a legal entity doing business as Verizon Wireless.  Guzman was the manager of the Verizon store at 166 West 125th Street, New York, New York at the time of the events at issue.  Officer Ramon Polanco[2] is the NYPD officer who arrested Toomer; Toomer also sues four John Doe officers (collectively with the City of New York and Polanco, the "City defendants").  Polanco and Guzman are sued in their individual and official capacities.

   **B.  Facts**

On January 21, 2011, Toomer went to the Verizon store because her Blackberry cell phone was malfunctioning.  Compl. ¶ 12.  She had a contract with Verizon for mobile wireless service.  *Id.*  She was told by an unnamed Verizon employee that she had six days left on her contract, and that she could obtain a new cell phone for either $99 or $149.  *Id.*  Toomer chose not to purchase the new cell phone that day.  On Sunday, January 23, 2011, she returned to the store in the early afternoon.  *Id.* ¶ 13.  She was told by a different employee that the information she had received two days earlier was incorrect:  In fact, her contract had expired, meaning she would have to spend $500 for a new Blackberry device.  *Id.*

---

[1] The following facts are drawn from the Amended Complaint ("Compl.") (Dkt. 13) and the parties' submissions; for the purpose of resolving this motion to dismiss, the Court takes plaintiff's allegations in the Complaint as true.  The parties' submissions include: (1) Verizon Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Defs.' Mem.") (Dkt. 16); (2) Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n") (Dkt. 19); and (3) Verizon Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss ("Defs.' Reply") (Dkt. 22).

[2] In some of Toomer's papers, she misspells Officer Polanco's name.  The Court has corrected those references.

After Toomer asked for a manager, the manager, Guzman, confirmed that the contract had lapsed. *Id.* ¶ 14. Toomer began to "calmly reason with [Guzman]." *Id.* Guzman then became "loud and aggressive," and refused to reveal her name or tender her business card. *Id.* "At [p]laintiff's behest, [d]efendant Guzman called police officers into the store to redress the situation." *Id.* When police officers arrived, they informed Toomer that there was nothing they could do. *Id.* ¶ 15. Toomer then wrote down the officers' badge numbers. *Id.* Guzman asked one of the officers to tell Toomer to leave; Toomer claims she did so immediately. *Id.* ¶¶ 15, 19. When she left the store, the four officers left as well. *Id.* ¶¶ 15–16. Once outside the store, Officer Polanco began to "verbally abuse" Toomer, who asked "why he was treating her that way." *Id.* ¶ 16. Officer Polanco then demanded that Toomer place her hands behind her back, and arrested her. *Id.*

Toomer was driven, in the back of the police car, to the local precinct. *Id.* ¶ 17. During the ride, she claims, she suffered extreme pain and discomfort, due in part to two hip replacements. *Id.* She was released three and a half hours later. *Id.* ¶ 18. When she left the precinct, she checked her purse for the paper on which she had written the police officers' badge numbers, but it was missing. *Id.* ¶ 22. She returned to the station, where Officer Polanco told her she "didn't need the names of the officers." *Id.* Officer Polanco wrote his "name and badge number on a Chinese restaurant delivery check and told her to leave." *Id.*

Toomer was charged under New York State Penal Law § 140.10 with criminal trespass in the third degree.[3] *Id.* ¶ 18; N.Y. Penal Law § 140.10 (McKinney 2012). The criminal complaint states that Guzman "asked [Toomer] to leave because [Toomer] was acting inappropriately by

---

[3] In relevant part, the statute reads: "A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property . . . which is fenced or otherwise enclosed in a manner designed to exclude intruders . . . ." N.Y. Penal Law § 140.10(a) (McKinney 2012).

3

screaming obscenities at [Guzman]." Compl. ¶ 19.  It also states that Guzman asked Toomer "to leave multiple times, that [Toomer] refused to leave, and that [Toomer] did not have permission or authority to remain" at the store. *Id.*  In her Complaint, Toomer disputes this characterization, claiming that she left the store immediately upon being asked. *Id.* ¶ 20.  On July 13, 2011, after Toomer had made four court appearances, the charges against her were dismissed. *Id.* ¶¶ 21, 24.  However, because of the arrest and the criminal charges against her, she had been suspended from her position at the New York City Department of Education. *Id.* ¶ 23.

Toomer alleges that Officer Polanco and Guzman engaged during these events in a "joint venture and formed an agreement to violate [Toomer's] rights." *Id.* ¶ 23.  The defendants, she claims, "assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events." *Id.*

**C. Toomer's Claims**

The Complaint contains 11 causes of action.  The first is brought against all defendants under 42 U.S.C. § 1983.  It claims deprivations of Toomer's rights under the Fourth Amendment to be free from unreasonable searches and seizures by virtue of the defendants' alleged false arrest, malicious prosecution, and assault and battery of her, and the conspiracy to take these actions.[4]  It also claims a violation of her Fourteenth Amendment right to due process.  Toomer's other claims are for: (1) malicious prosecution, against all defendants; (2) violation of her rights under §§ 5, 6, and 12 of the New York State Constitution, against all defendants; (3) conspiracy to falsely arrest, maliciously prosecute, and commit assault and battery, against Guzman, Officer

---

[4] Toomer does not include in her § 1983 claim the allegation that defendants are liable for assault and battery.  However, in her fourth and fifth causes of action, which allege assault and battery under state law, she simultaneously alleges violations of the federal statute.  The Court will construe the Complaint as though Toomer had pleaded assault and battery against all defendants under § 1983.

Polanco, and the John Doe police officers; (4) negligent hiring and retention, against Verizon; (5) grossly negligent hiring and retention, against Verizon; (6) respondent superior, against Verizon; (7) *Monell* liability, against the City; (8) false arrest, against the City, Officer Polanco, and the John Doe police officers; (9) assault, against the City, Officer Polanco, and the John Doe police officers; and (10) battery, against the City, Officer Polanco, and the John Doe police officers.[5]

## II.     Legal Standard on a Motion to Dismiss

Verizon and Guzman move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the suit against them for failure to state a claim.  To survive such a motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.  The Court must accept as true all well-pleaded factual allegations in a complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks and citation omitted).  On the other hand, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (noting that a court is "'not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

---

[5] Because Verizon and Guzman are the only movants, the Court has no occasion here to address these last three claims, which are not brought against these defendants.

**III.    Discussion**

    **A. Toomer's Section 1983 Claim**

Toomer's § 1983 cause of action asserts a violation of her Fourth Amendment rights based on her (1) false arrest, (2) malicious prosecution, (3) assault, and (4) battery, and on (5) a conspiracy among all defendants to commit each of these wrongs. She also argues (6) that defendants violated her due process rights under the Fourteenth Amendment.

        **1. Legal Standard**

To establish liability under § 1983, a plaintiff must prove (1) the deprivation of a constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," and (2) that the defendant is either a state actor or a private party acting under color of state law. 42 U.S.C. § 1983; *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992); *Zaidi v. Amerada Hess Corp.*, 723 F. Supp. 2d 506, 513–14 (E.D.N.Y. 2010); *Valez v. City of N.Y.*, No. 08-cv-3875, 2008 WL 5329974, at *2 (S.D.N.Y. Dec. 16, 2008). The second requirement, on which the motion to dismiss this claim is focused, precludes § 1983 liability for purely private conduct, "however discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted).

Toomer therefore argues that Guzman, a private citizen, acted under color of state law. In essence, she claims, Guzman lied to authorities, who then arrested and prosecuted Toomer for trespass, although the charges were ultimately dropped.

There are circumstances under which conduct "'that is formally "private" may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action.'" *Kia P. v. McIntyre*,

235 F.3d 749, 757 (2d Cir. 2000) (quoting *Perez v. Sugarman*, 499 F.2d 761, 764–65 (2d Cir. 1974)) (additional citation omitted). However, "[f]or a private individual or entity to be deemed to have been acting under color of state law the allegedly unconstitutional conduct of which plaintiff complains must be 'fairly attributable to the state.'" *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385, 396 (S.D.N.Y. 2006) (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003)) (additional internal quotation marks omitted), *cert. denied*, 539 U.S. 942 (2003). Conduct will be "fairly attributable to the state" where there is "'such a close nexus between the [s]tate and the challenged action that seemingly private behavior may be fairly treated as that of the [s]tate itself.'" *Bishop*, 414 F. Supp. 2d at 396 (quoting *Tancredi*, 316 F.3d at 312).

Significant here, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). There must be proof of a "plan, prearrangement, conspiracy, custom or policy," *Ginsberg v. Healey Car & Truck Leasing Inc.*, 189 F.3d 268, 272 (2d Cir. 1999), that is, a "'meeting of the minds' between [a state actor] and private individuals." *Manbeck v. Micka*, 640 F. Supp. 2d 351, 379 (S.D.N.Y. 2009) (citing *Adickes*, 398 U.S. at 158); *see Chodkowski v. City of N.Y.*, No. 06-cv-7120, 2007 WL 2717872, at *10 (S.D.N.Y. Sept. 11, 2007); *see also Tancredi*, 316 F.3d at 313 ("State action may properly be found where the state exercises coercive power over, is entwined in [the] management or control of, or provides significant encouragement, either overt or covert to, a private actor, or where the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state,

or is entwined with governmental policies."); *Prowisor v. Bon-Ton Inc.*, 426 F. Supp. 2d 165, 170 (S.D.N.Y. 2006), *aff'd*, 232 F. App'x 26 (2d Cir. 2007).

Further, as a matter of law, the mere reporting of information to law enforcement is insufficient to support a claim of state action by a private party. *See Zaidi*, 723 F. Supp. 2d at 514 (citing *Ginsberg*, 189 F.3d at 272).[6] Even providing false information to the police does not alone make a private individual a state actor for the purposes of § 1983. *See Chodkowski*, 2007 WL 2717872, at *9 (citing *Johns v. Home Depot U.S.A. Inc.*, 221 F.R.D. 400, 405 (S.D.N.Y. 2004)) ("[E]ven assuming [the defendant] had supplied the police with false information, plaintiff would still fail to state a claim."); *Gotbetter v. Port Auth. of N.Y. & N.J.*, No. 98-cv-6762, 2000 WL 328044, at *2 (S.D.N.Y. Mar. 28, 2000) ("Although plaintiffs argue in their memorandum of law that defendant [] instigated their arrest by providing false information to police officers, they offer no evidence of a conspiracy."); *see also Collins v. Christie*, No. 06-cv-4702, 2007 WL 2407105, at *4 n.9 (E.D. Pa. Aug. 22, 2007) ("[E]ven if [the defendant] intentionally provided the false information to the police, the plaintiff would still fail to state a claim under § 1983."). To support a § 1983 claim against a private actor, Toomer must also plead bad faith on the defendant's part. *See Chodkowski*, 2007 WL 2717872, at *9.

### 2. Analysis

Measured against these standards, Toomer's § 1983 claim fails as a matter of law, because she does not plead sufficient facts to show the required nexus between the state and the private actions of either Guzman or Verizon. The only non-conclusory, concrete facts alleged to support a "meeting of the minds" between the private actors and the state actors are that: (1) Guzman called the police, at Toomer's request; (2) Guzman asked an officer to tell Toomer to

---

[6] Toomer acknowledges that "[c]alling a police officer for assistance and merely furnishing information to the officer does not rise to the level of state action." Pl.'s Opp'n 6.

leave the store; and (3) Guzman fabricated a story in which Toomer "scream[ed] obscenities" at Guzman, whereupon Guzman told her multiple times to leave.[7] As to the first fact, no conspiracy can lie, because, as Toomer pleads, she herself was responsible for bringing the police to the scene. Compl. ¶ 14 ("At Plaintiff's behest, Defendant Guzman called police officers into the store to redress the situation.").[8] By Toomer's own account, Guzman and the police could not have partnered together until after the police arrived. *See* Pl.'s Opp'n 4 (it "was after the arrival of the police officers that defendant Guzman concocted a story to ensure plaintiff's arrest").

      That places the earliest possible point of any conspiratorial "collaboration" between the private and state actors at the moment the police walked into the Verizon store and made contact with Guzman. Even then, however, by Toomer's account, she was, up until the moment of her arrest, with the police officers and Guzman at all times, and in a position to witness any interaction between them; Toomer does not allege any opportunity for them to collaborate outside her presence. Importantly, she does not allege any suspicious interaction of any kind between the officers and Guzman prior to her arrest. Indeed, the only concrete allegation of any interaction between the officers and Guzman prior to the arrest is that Guzman, in Toomer's presence, asked the police to tell Toomer to leave. This is entirely insufficient to allege a

---

[7] The criminal complaint, as quoted in Toomer's Complaint, reads, in pertinent part: "[Defendant Polanco] is further informed by [defendant Guzman] that [Guzman] asked [Toomer] to leave because [Toomer] was acting inappropriately by screaming obscenities at [Guzman]. [Polanco] is further informed by [Guzman] that [Guzman] asked [Toomer] to leave multiple times, that [Toomer] refused to leave, and that [Toomer] did not have permission or authority to remain at said store." Compl. ¶ 19. Toomer claims she left immediately when asked. *Id.* ¶¶ 20–21.

[8] Toomer has not identified any § 1983 case involving false arrest in which the § 1983 plaintiff herself acknowledged instigating the call to the police.

"meeting of the minds" between the police and Guzman.  *See Ginsberg*, 189 F.3d at 272 (a meeting of the minds requires proof of a "plan, prearrangement, conspiracy, custom or policy").

In fact, Toomer alleges that, while in the store, an officer told her that "there was nothing the police could do and that the dispute was a matter for the court."  Compl. ¶ 15.  This suggests that, up until just prior to the arrest, the police had no intention of taking Toomer into custody.  The arrest ensued when Toomer was outside the Verizon store with the officers, who left the store at the same time as Toomer did.  *Id*. ¶ 16.  In light of these alleged facts, the Complaint is wholly devoid of any plausible allegation supporting a conspiracy implicating Guzman or Verizon to bring about Toomer's arrest.

Nor does Toomer allege facts sufficient to prove Guzman's or Verizon's participation in a malicious prosecution.  Toomer bases that claim on the assertion that the ensuing criminal complaint was "wholly justified based on the representations Defendant Guzman allegedly made to Defendant Officer Polanco."  Pl.'s Opp'n 2.  But this allegation is entirely conclusory.  *See Gotbetter*, 2000 WL 328044, at *2 (finding that without evidence of conspiracy, allegation that private defendant instigated arrest by providing false information to police officers was insufficient for § 1983 liability); *see also Alexis v. McDonald's Rests. of Mass. Inc.*, 67 F.3d 341, 351–52 (1st Cir. 1995) ("There was no evidence of joint discriminatory action between [the defendants]—whether by plan, prearrangement, conspiracy, custom, or policy—which would enable a rational factfinder to conclude that [plaintiff's] arrest resulted from concerted action tantamount to substituting the judgment of a private party for that of the police or allowing the private party to exercise state power.").

Further, even assuming—contrary to the case here—"that the Complaint adequately alleges that a false statement made by [the civil defendant] in a criminal complaint resulted in the

violation of plaintiffs' Fourth and Fourteenth Amendment rights, this allegation is insufficient to allege state action" on the part of private defendants. *Delince v. City of N.Y.*, No. 10-cv-4323, 2011 WL 666347, at *3 (S.D.N.Y. Feb. 7, 2011). Because Toomer's Complaint fails as a matter of law to plead sufficient facts to nudge her § 1983 claims against the private defendants over the line from conceivable to plausible, these claims must be dismissed. *See Twombly*, 550 U.S. at 547.

### B.  New York State Law Claims

Toomer's remaining substantive claims are brought under state law. "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity." *Klein & Co. Futures Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006). Although Toomer's sole federal claim against Guzman and Verizon is deficient, it is sensible to exercise supplemental jurisdiction over her state law claims, because the federal and state claims against the City defendants remain, and Toomer's remaining state law claims arise from the same set of facts and circumstances. *See* 28 U.S.C. § 1367; *Chambers v. Capital Cities/ABC*, 851 F. Supp. 543, 545 (S.D.N.Y. 1994) ("Duplicative litigation at multiple levels of government involving the same facts [is] contrary to the objectives of the Supplemental Jurisdiction Act and the public interest.").

The Court addresses these state claims—brought against Guzman, Verizon, or both—in turn. Although some such claims are also brought against one or more of the City defendants, the Court's ensuing analysis applies only to the two moving defendants.

### 1. Malicious Prosecution

In New York, § 1983-based malicious prosecution claims, like false arrest claims, are "distinguished from their state law analogues only by the requirement that the tortfeasor act 'under color of state law.'" *Prowisor*, 426 F. Supp. 2d at 171. Toomer's state law malicious prosecution claim against Guzman and Verizon can, thus, be valid even though her § 1983 claim of malicious prosecution is not. Under New York law, to establish a claim for malicious prosecution, a plaintiff must prove (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor. *Rohman v. N.Y. City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

"'Initiation' in this context is a term of art." *Id.* at 217. "A person who tells law enforcement authorities that he or she thinks that a crime has been committed and does no more, does not thereby put him- or herself at risk of liability for malicious prosecution should the arrest or prosecution later be abandoned or result in an acquittal." *Id.* Rather, for an individual to "initiate" a prosecution in this context, it "must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Id.* The defendant must affirmatively induce the officer to act by, for example, "showing active, officious and undue zeal, to the point where the officer is not acting of his own volition." *Delince*, 2011 WL 666347, at *1–2 (quoting *Lupski v. Cnty. of Nassau*, 32 A.D.3d 997, 998 (2d Dep't 2006)); *see also Donnelly v. Nicotra*, 55 A.D.3d 868, 868 (2d Dep't 2008) ("[A] civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be

made and criminal charges filed, will not be held liable for false arrest or malicious prosecution.").

*Delince* is instructive here. There, the plaintiffs got into a dispute with a restaurant manager and an employee over an amount owed on a bill. 2011 WL 666347, at *1–2. The restaurant manager called the police; when one plaintiff refused to sign the bill because she claimed she would be overcharged, the police arrested her; when the other plaintiff questioned the grounds of the arrest, she, too, was arrested. *Id.* Plaintiffs sued both the manager and the employee, claiming, *inter alia*, that the restaurant employee "falsely stated that the plaintiffs refused to pay their bill." *Id.* at *5. The Court dismissed the malicious prosecution claim against the employee on the grounds that the allegations against him were limited to his statement recited in the criminal complaint. *Id.* at *6; *cf. Estiverne v. Esernio-Jenssen*, 581 F. Supp. 2d 335, 347 (E.D.N.Y. 2008) (holding that plaintiff stated a claim for malicious prosecution against doctor based on her ostensibly false child abuse report, when that claim was buttressed by alleged history of falsification, disregard of a colleague's assessment, and complete lack of foundation for diagnosis).

The facts here are quite similar to those in *Delince* and a far cry from those in *Estiverne*. As in *Delince*, the only fact adduced in support of the malicious prosecution claim against the private citizen defendant is a single statement attributed to her in the criminal complaint. Here, that statement was simply that Guzman "had asked [Toomer] to leave because [Toomer] was acting inappropriately by screaming obscenities at [Guzman]" and that Guzman "asked [Toomer] to leave multiple times, that [Toomer] refused to leave, and that [Toomer] did not have permission or authority to remain at said store." Compl. ¶ 19.

13

This allegation of a single falsehood reported to the police falls far short of the standard for liability of a private citizen articulated by the Second Circuit in *Rohman*: Toomer does not, for example, accuse Guzman of "encourag[ing] or importuning the authorities to act," *Rohman*, 215 F.3d at 215, nor does she allege such "active, officious and undue zeal" that the police officers could be said not to be "acting of [their] own volition," *Delince*, 2011 WL 666347, at *1–2. Her state law malicious prosecution claim against Guzman must, therefore, be dismissed.

### 2. Conspiracy

Toomer alleges a conspiracy between Guzman and all the police officers—"an agreement to falsely arrest, maliciously prosecute, and assault and batter" her. Compl. ¶ 50. Under New York State law, conspiracy is not an independent tort. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006). If the underlying independent tort—here, false arrest, malicious prosecution, assault, or battery—is inadequately pleaded, the conspiracy claim must be dismissed. *See Ho Myung Moolsan Co. Ltd. v. Manitou Mineral Water Inc.*, 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009).

To prove a conspiracy under New York law, Toomer must show: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in furtherance of a plan or purpose; and (4) resulting damage or injury. *DirecTV Latin Am. LLC v. Park 610 LLC*, 691 F. Supp. 2d 405, 425 (S.D.N.Y. 2010) (citing *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986)). "As is true in criminal conspiracies, agreements in civil conspiracies will not easily be shown by direct evidence, but may be inferred from circumstantial evidence." *Cofacredit S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 240 (2d Cir. 1999). In order to survive a motion to dismiss, however, a complaint "must contain more than general allegations in support of the conspiracy." *Brownstone Inv. Grp. LLC v. Levey*,

14

468 F. Supp. 2d 654, 661 (S.D.N.Y. 2007); *see also Grove Press*, 649 F.2d 121, 123 (2d Cir. 1981) (citing *Goldstein v. Siegel*, 19 A.D.2d 489, 493 (1963)) (a bare, conclusory allegation of conspiracy does not state a cause of action). Instead, a complaint must allege "specific times, facts, and circumstances of the alleged conspiracy." *Brownstone*, 468 F. Supp. 2d at 661 (citing *Fitzgerald v. Field*, No. 99-cv-3406, 1999 WL 1021568, at *4 (S.D.N.Y. Nov. 9, 1999)) (additional citations omitted).

In particular, a plaintiff must "'allege at least some of the facts of agreement or separable acts, if any, of the alleged co-conspirators in order to support the responsibility of each for the acts of all the others. Otherwise, the allegation remains the barest of legal conclusions.'" *Stutts v. De Dietrich Grp.*, No. 03-cv-4058, 2006 WL 1867060, at *14 (E.D.N.Y. June 30, 2006) (quoting *Goldstein*, 19 A.D.2d at 493); *see also Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (quoting *Ciambriello,* 292 F.3d at 325) (additional citations omitted) (finding that conspiracy claims stating "'diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct'").

Toomer fails to allege sufficient facts to satisfy those standards. In her brief, she marshals the allegations in the Complaint "that may support an inference of conspiracy":[9]

> (1) There was a dispute at the store between defendant Guzman and plaintiff about the cell phone contract prior to the police arriving ¶ 13; (2) the plaintiff was responsible for the calling of police ¶ 14; (3) when police told plaintiff that it was a matter for the court, she asked for their badge numbers ¶ 15; (4) defendant Officer Polanco told plaintiff that defendant Guzman asked Polanco to tell plaintiff to leave ¶ 15; (5) plaintiff left *Id.*; (6) defendant Polanco, after demanding that she leave the store, went out after her to arrest her ¶ 16; and (7) defendant Polanco swore out a criminal complaint against plaintiff, claiming that he was informed by [d]efendant Guzman that she committed a crime ¶ 20.

---

[9] Each paragraph reference is to a paragraph in the Amended Complaint.

Pl.'s Opp'n 5. Only two of these allegations (numbers 4 and 7) describe interaction of any kind between Guzman and the officers. Toomer's fourth accusation, read most favorably to her, is that Guzman indirectly (through Officer Polanco) told Toomer to leave. But that fact does not give rise to any inference of unlawful agreement. Without more, this spare communication (in Toomer's presence) is entirely benign and unexceptional; it does not give rise to an inference of an agreement of any kind, let alone one to act unlawfully. *Cf. Stutts*, 2006 WL 1867060, at *14 (requiring that plaintiff "allege at least some of the facts of agreement").

As to Toomer's seventh accusation, that Guzman supplied Officer Polanco with allegedly false information that led to her arrest and prosecution, it, too, is inadequate to give rise to an inference of conspiracy. *See Brownstone*, 468 F. Supp. 2d at 661. It falls far short of providing a specific factual basis upon which a finder of fact could fairly infer a corrupt agreement between Guzman and the officer. *See Fisk*, 424 F. Supp. 2d at 677 (holding "diffuse and expansive allegations" insufficient without claims of "specific instances of misconduct"); *DirecTV Latin*, 691 F. Supp. 2d at 425 (requiring allegations of intentional participation for conspiracy allegation to be sustained).

*Lucas v. Novogratz*, No. 01-cv-5445, 2002 WL 31844913, at *4 (S.D.N.Y. Dec. 18, 2002), on which Toomer relies, is far afield. There, the plaintiff alleged an ongoing relationship between a police officer and the private defendants. The complaint in that case was laced with concrete factual allegations, which, if viewed in combination, the plaintiff argued, provided a sufficient basis on which to infer a conspiracy. These included allegations that the police officer and the private defendants were friends, that the officer had stated he would act to block any complaints filed in his precinct by the plaintiff against the private defendants, and that there were continuing conversations between the private defendants and the complicit officer. *Id*. Even

16

with this litany of allegations, in sustaining the conspiracy claim, the district court noted that "the inference of conspiracy [was] hardly compelling." 2002 WL 31844913, at *5.

Toomer's Complaint does not come close to the level of concrete factual allegations found in the *Lucas* complaint. The Court, therefore, dismisses Toomer's conspiracy claim as against Guzman and Verizon.

### 3. Constitutional Tort

Toomer also alleges violations of the New York State Constitution, specifically Article I, sections 5, 6, and 12.[10] But, as Toomer appears to recognize, *see* Compl. ¶ 54, a constitutional tort may be brought against a private actor under New York law only if that individual acted under color of law. *See Algarin v. N.Y. City Dep't of Corr.*, No. 06-cv-508, 2006 WL 1379605, at *1 (S.D.N.Y. May 19, 2006) (dismissing constitutional tort claims against private actor for want of state action); *Hightower v. United States*, 205 F. Supp. 2d 146, 154 n.4 (S.D.N.Y. 2002) (finding that "the New York State Constitution only permit[s] suits against state actors acting under color of state law"). As discussed above, *see supra* § III.A, Toomer has failed to plead facts showing that Guzman was acting under color of law. Thus, her constitutional tort claim must also be dismissed.

### 4. Negligent Hiring and Retention

Toomer's next claim, against Verizon, is for negligent hiring and retention of Guzman. Under New York law, an employer can be held liable for negligent hiring, negligent retention, and negligent supervision. *See Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 225 (E.D.N.Y. 2010); *Daniels v. Loizzo*, 174 F.R.D. 295, 299 (S.D.N.Y. 1997). Such a claim requires the

---

[10] Toomer does not make clear in her Complaint exactly which of her rights under the New York Constitution were violated. Because the Court dismisses this cause of action on other grounds, it is unnecessary to obtain more specificity as to her theory of liability.

plaintiff to show the standard elements of negligence, as well as that: (1) the tortfeasor and the defendant were in an employee-employer relationship; (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) the tort was committed on the employer's premises or with the employer's chattels. *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citing *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 161 (2d Dep't 1997)); *see also Daniels*, 174 F.R.D. at 299 (citation omitted) ("A necessary element of such causes of action is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury.").

Here, Toomer does not allege any concrete facts whatsoever supporting her bare claim that Verizon "breached [a duty of reasonable care] by hiring and retaining defendant Leslie Guzman, causing a foreseeable injury to plaintiff." Compl. ¶ 57. Thus, her claim for negligent hiring and retention must be dismissed. *See, e.g.*, *Dilworth v. Goldberg*, No. 10-cv-2224, 2011 WL 3501869, at *27 (S.D.N.Y. July 28, 2011), *report and recommendation adopted*, 2011 WL 4526555 (S.D.N.Y. Sept. 30, 2011) (dismissing claim where employer was only conclusorily alleged to have "kn[own] or should have known of [its] employees' unconstitutional, malicious, and/or reckless conduct, but refused or failed to take appropriate measures"); *see also Doe v. Guthrie Clinic Ltd.*, No. 11-cv-6089, 2012 WL 531026, at *7 (W.D.N.Y. Feb. 17, 2012) ("In the instant case, there is no credible, nonconclusory allegation that any defendant knew or should have known that [a nurse] would breach her duty of confidentiality with respect to any patient's private health information. Accordingly, plaintiff has failed to state a claim for negligent hiring."). For the same reasons, Toomer's claim for grossly negligent hiring and retention must also be dismissed.

### 5. Respondeat Superior

Toomer finally invokes the doctrine of respondeat superior to impute Guzman's actions to Verizon. The doctrine of respondeat superior "renders a master vicariously liable for a tort committed by his servant while acting within the scope of his employment." *Bektic-Marrero v. Goldberg*, No. 11-cv-1781, 2012 WL 733875, at *14 (S.D.N.Y. Mar. 7, 2012) (quoting *Dilworth*, 2011 WL 3501869, at *29). However, to state a claim for respondeat superior against Verizon, Toomer must plead an underlying tort against Guzman. *See Shapiro v. Kronfeld*, No. 00-cv-6286, 2004 WL 2698889, at *24 (S.D.N.Y. Nov. 24, 2004) (citing *Wende C. v. United Methodist Church*, 6 A.D.3d 1047, 1052 (4th Dep't 2004)) (finding that "there can be no imposition of vicarious liability in the absence of underlying liability"). Toomer has failed to do so. Thus, her claim against Verizon based on respondeat superior must also be dismissed.

## CONCLUSION

For the reasons stated above, Verizon and Guzman's motion to dismiss all claims brought against them is GRANTED. Both parties' motions for costs and fees are DENIED. The Clerk of Court is directed to terminate the motion pending at docket entry number 9 and to terminate Verizon and Guzman from this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 20, 2012
      New York, New York